IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 17-09-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| SCOTT MATTHEW THUM, | |
| Defendant. | |

Defendant Scott Matthew Thum is charged with Possession of a Stolen Firearm. (Doc. 1). He has moved to suppress the shotgun found when law enforcement stopped his car. (Doc. 27). Having considered the papers submitted by the parties, and finding oral argument unnecessary, the Court DENIES Thum's motion.

I.  **Background**

On July 22, 2016, a traffic control supervisor monitoring traffic in a construction zone along Highway U.S. 7 saw a maroon car driving erratically. He contacted 911 and provided the car's license plate number, 52-2321A. The 911 operator advised Fallon County Sheriff's Dispatch and dispatch alerted all units on patrol.

1

Undersheriff Nic Eisele was leaving the Fallon County Sheriff's Office. As he walked out the front door, he saw a car matching the 911 operator's description. He got into his patrol car and started following the car. Not long after, he saw Officer Ryan James coming towards the car from the other direction, so he told James to turn and pursue the car. James made a U-turn and turned on his siren and overhead lights. The driver of the maroon car did not pull over. Eventually the car became stuck behind other vehicles waiting at a stop sign. Officer Luke Hauke drove directly at the car with his overhead lights engaged and Eisele swung his patrol car to the left of James' patrol car. The officers blocked the car's escape and conducted a felony stop. The driver was Defendant Scott Thum.

Eisele got out of his patrol car and repeatedly ordered Thum to put up his hands but Thum would not comply. Eisele approached Thum and continued to tell him to show his hands. Thum slowly raised his hands, holding a cell phone in his right hand. As Eisele got closer to the car, he saw a shotgun sitting in the front passenger seat of the car, next to Thum. Eisele unsnapped his service weapon and told Eisele to put his hands up high. Eisele advised James and Hauke that a shotgun was on the passenger seat. James reached in the window and seized the shotgun. Eisele then asked Thum to get out of the car. Hauke detained and handcuffed Thum.

Eisele told Thum why he had stopped him. Thum had bloodshot eyes and a dazed expression. He asked if he could have his wallet out of the car. As Eisele went to the car to get Thum's wallet, he saw Thum's wallet on the console, three 16 oz. unopened Bud Lights on the passenger seat, and 2-3 20 gauge shotgun shells and rifle brass in the cup holder and on the floorboards. When Eisele ran Thum's information, he discovered that Thum was a registered violent offender on the Montana Sexual Violent Offender Registry. Thum was placed under arrest and taken to Fallon County Jail.

Eisele called ATF Task Force Officer Steven Feuerstein and told him that Thum was on the violent offender registry and was caught in possession of a shotgun. During his conversation with Feuerstein, Eisele examined the gun and discovered a 20 gauge round loaded in the chamber. Feuerstein's investigation determined that the shotgun had been stolen from Thum's former work supervisor.

## II. Discussion

Thum argues that the officers lacked probable cause to seize the shotgun because (1) Thum did not consent, (2) the officers did not have any reason to believe Thum intended to use the shotgun, and (3) the officers did not know the shotgun was stolen when they seized it, so the seizure was unlawful. Thum is wrong.

3

A. **Thum was lawfully arrested**

The Fourth Amendment to the Constitution protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. Evidence derived from a search or seizure must comport with this Forth Amendment protection to be admissible. *Terry v. Ohio*, 392 U.S. 1, 12-13 (1968). An automobile stop is a seizure under the Fourth Amendment and therefore must be reasonable under the circumstances. *See Whren v. United States*, 517 U.S. 806, 810 (1996). Here, in light of his dangerous driving in a construction zone, and attempting to avoid Eisele, Thum does not dispute that officers had reasonable suspicion to stop him. (*See* Doc. 28 at 11).

Generally, a warrant based on probable cause is required before law enforcement may conduct a valid search or seizure. U.S. Const. amend. IV; *Terry*, 392 U.S. at 20. However, the Fourth Amendment permits a warrantless search incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 224 (1973).

An arrest under the Fourth Amendment occurs when an officer intentionally applies physical restraint of a suspect, *California v. Hodari D.*, 499 U.S. 621, 624, (1991), or initiates a show of authority to which a reasonable innocent person would feel compelled to submit, and to which the suspect does submit for reasons that are solely related to the official show of authority, *Florida v. Bostick*, 501 U.S.

429, 436-37 (1991). Here, it is undisputed that three patrol cars blocked Thum's ability to drive away, and Eisele demanded that Thum show his hands. It is further undisputed that Thum eventually submitted to Eisele's commands, was removed from the car, and placed in handcuffs. There is no dispute that an arrest occurred.

Probable cause supported Thum's arrest because, as noted above, based on Thum's erratic driving, Eisele had probable cause to believe that Thum had committed the crime of criminal endangerment. He also had probable cause to believe Eisele had committed the crime of driving under the influence after he observed Thum's eyes and saw three unopened beer cans in the car. Based on these facts, the Court finds that Thum's arrest was lawful.

**B.     Search was substantially contemporaneous with Thum's arrest**

Searches incident to arrest are exempted from the warrant and probable cause requirements of the Fourth Amendment. *Robinson*, 414 U.S. at 235. (striking down the search of an arrestee's entire house as beyond the scope of a search incident to arrest). Under the search incident to arrest doctrine, law enforcement officers may search the area within the arrestee's immediate control. *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (citing *New York v. Belton*, 453 U.S. 454, 460-61 (1981)). Such searches are justified as a means to find weapons the arrestee might use or evidence the arrestee might conceal or destroy. *Id.* (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)).

The shotgun was within the boundaries contemplated in a search incident to arrest: it was laying on the front passenger seat right next to Thum and within his immediate control. The fact that James picked up the shotgun before Eisele removed Thum from the car and placed him in handcuffs is of no consequence. According to the Ninth Circuit, "[a] search incident to arrest need not be delayed until the arrest is effected." *Smith*, 389 F.3d at 951. "When an arrest follows 'quickly on the heels' of the search, it is not particularly important that the search preceded the arrest rather than vice versa." *Id.* (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). The Ninth Circuit explained that the relevant focus is "not strictly on the timing of the search but its relationship to (and reasonableness in light of) the circumstances of the arrest." *Id.* So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical. *Id.*; *see also United States v. Potter*, 895 F.2d 1231, 1234 (9th Cir.1990) (finding no Fourth Amendment violation for pre-arrest "pat down" search of suspect based on probable cause to arrest, and noting that "[a] search incident to an arrest is valid whether it occurs immediately before or after the arrest.").

Here, the timing of the seizure of the shotgun was reasonable. Officers were dealing with an individual who had reportedly created a danger to people in a construction zone, attempted to evade law enforcement, disregarded law

6

enforcement's attempts to pull him over, and ultimately had to be stopped using three patrol cars. Moreover, Thum demonstrated a reluctance to comply with officer commands to put his hands up. Thum's behavior combined with the fact that he had a shotgun right next to him presented a significant threat to officer safety.

The Court finds that the shotgun was seized pursuant to a lawful search incident to arrest. Additionally, officers did not need Thum's consent or need to believe that the shotgun was stolen at the time they seized it; they were authorized to seize it for their own safety. *See Warren v. United States*, 447 F.2d 259, 261 (9th Cir. 1971) (an officer is justified in retrieving any weapons in sight for purposes of self-protection); *see also United States v. Willis*, 431 F.3d 709, 717 (9th Cir. 2005) (once officers discover firearm, they are entitled to seize it "in order to avoid any possibility that [defendant] would use [it] against [them].").

### III. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Thum's Motion to Suppress (Doc. 27) is DENIED.

DATED this 11th day of September, 2017.

SUSAN P. WATTERS
United States District Judge